IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**Technical Innovation, L.L.C.**

                                                                           No. 2:14-cv-02899-SHL-dkv

                **Plaintiff,**

**v.**

**Michael Towne, et al**

                **Defendants.**

**PLAINTIFF TECHNICAL INNOVATION, LLC'S OPPOSITION TO
DEFENDANT M3 TECHNOLOGY'S MOTION TO DISMISS**

Plaintiff Technical Innovation, L.L.C. ("Plaintiff" or "TI"), through its undersigned counsel, hereby submits its Opposition to Defendant M3 Technologies' ("M3") Motion to Dismiss, and in support thereof states as follows:

### I.     BACKGROUND FACTS

The background facts as alleged in the Second Amended Complaint, as they pertain to M3, are as follows. As a condition of his employment with TI, Defendant Michael Towne entered into an employment agreement with TI titled "Terms and Conditions of Employment" ("Agreement"). The Agreement between TI and Towne is a valid and enforceable contract supported by ample consideration including, but not limited to, Towne's employment with TI, ample time and expense TI committed to training and developing him, and access to TI's confidential and proprietary customer and business information, and customer base. (Second Amended Compl. Para. 8). Incorporated at paragraph 3(b) of the Agreement is a COVENANT AGAINST DIVERSION OF PROJECTS OR CUSTOMERS pursuant to which Towne agreed

that he would not, during the period of his employment with TI and for a period of one year after the separation of his employment with TI, solicit, divert or appropriate any "project" from a customer or prospective customer with which Towne had "material contact" during his employment with TI. "Material contact" is defined as contact between Towne and any TI customer or prospect with which Towne dealt for TI, whose dealings with TI were coordinated by Towne for TI, or which resulted in Towne receiving compensation, commission or earnings, as a result of his relationship with the customer. "Project" is defined as any TI project evidenced by any written agreement, contract or proposal which is evidenced by correspondence or other documentation, or otherwise reflected in the books or records of TI, and which existed or was otherwise active in the two years prior to Towne's separation from TI, which Towne knew about due to his material contact with the customer or project. The restriction is limited to "providing products or services that are competitive with those provided by" TI. (Second Amended Compl. Para. 9).

Following his separation from TI, Towne went to work for a competitor, M3. (Second Amended Compl. Para. 13). Both at the time of his separation, and by letter dated October 10, 2014, TI reminded Towne of his obligations under his Agreement, and that TI expected him to honor those obligations. (Second Amended Compl. Para. 13). Nevertheless, TI learned that Towne was soliciting, diverting and appropriating restricted customer projects with which he had material contact for TI, on behalf of M3 in violation of his Agreement, including, for example, restricted projects such as the University of Memphis New Collierville Classroom Project and the FIT Ticker Project, which projects he had played a lead role on while working for TI, from the most significant customer he serviced on behalf of TI, the University of Memphis. (Second Amended Compl. Para. 15).

TI filed suit to enforce its rights under the Agreement. On December 5, 2014, a Temporary Restraining Order was entered against Towne requiring him to honor the Agreement. On January 13, 2015, a Preliminary Injunction Order was entered against Towne requiring him to honor the Agreement. It was ordered that "Defendant Michael Towne is restrained from soliciting, diverting or appropriating or attempting to do so, either directly or by assisting others or otherwise performing any work on" a series of restricted projects that were listed in the Order (referred to hereafter as "Restricted Projects"). Among the Restricted Projects were "H04676 & H05905 University of Memphis – Community Health" and "H05855 Methodist LeBonheur FOB BLDG-Ed Center". (Second Amended Compl. Para. 15). Before employing Towne to work in Memphis in competition with TI, including soliciting work from TI customer the University of Memphis, M3 did little or no business in or around Memphis, and no business with the University of Memphis. (Second Amended Compl. Para. 21).

TI has alleged that M3, as Towne's employer, knew about his Agreement, and about both the TRO and the Preliminary Injunction Order, entered enforcing the Agreement. (Second Amended Compl. Para. 37, 49). Nevertheless, following the entry of the TRO and the Preliminary Injunction, M3 solicited and bid for one of the Restricted Projects, "H04676 & H05905 University of Memphis – Community Health" that Towne had solicited on its behalf, in violation of the Agreement. The value of this Restricted Project is over $2,300,000.00. TI has alleged that M3, which did little or no business in or around Memphis, and no business with the University of Memphis, would neither have known about, let alone been in a position to bid for, this Restricted Project without the active introduction and involvement of Towne, who was TI's primary contact with the University, and who introduced, and actively participated in the bidding for the project on M3's behalf. TI has alleged that M3 intended to, and did, induce the breach of

Towne's Agreement, that it acted intentionally and with malice, and that the breach of Towne's Agreement occurred as a direct and proximate result of M3's conduct. (Second Amended Compl. Para. 21, 37, 38, 49, 50). TI alleged that the breach of the Agreement occurred as a direct and proximate result of M3's conduct, and that it has been damaged and continues to be damaged as a direct and proximate result of M3's conduct. (Second Amended Compl. Para. 38, 39, 50, 51).

## II.     ARGUMENT

### A.     Standard on Motion to Dismiss.

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, Smith v. City of Salem, 378 F.3d 566, 576 n. 1 (6th Cir.2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

When considering a motion to dismiss for failure to state a claim, a district court should "construe [the] complaint in the light most favorable" to the non-moving party and accept all "well-pled allegations as true." Terry v. Tyson Farms, Inc., 604 F.3d 272, 274 (6th Cir.2010) (citing Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir.2008)). See also Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570 (in deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face"); Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir.2007) (citation omitted). A claim is well-pled when "it

4

contains 'either direct or inferential allegations respecting all material elements' necessary for recovery under a viable legal theory." Phil. Indem. Ins. Co. v. Youth Alive, Inc., 732 F.3d 645, 649 (6th Cir.2013) (quoting Terry, 604 F.3d at 275–76). The complaint must also "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Reilly v. Vadlamudi, 680 F.3d 617, 622–23 (6th Cir.2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**B.     TI has stated plausible claims for relief against M3 for a statutory cause of action for procurement of breach of contract as well as a common law cause of action for tortious interference with contract.**

Tennessee law recognizes a statutory cause of action for procurement of breach of contract as well as a common law cause of action for tortious interference with contract. Cambio Health Solutions, LLC v. Reardon, 2007 WL 627834, *3 (6th Cir. 2007); Expert Janitorial v. Capital Contracting of Buffalo, 2013 WL 2450109 (E.D. Tenn. 2013). The two claims share the same elements: (1) the existence of a legal contract; (2) the defendant's knowledge of the contract; (3) the defendant's intent to induce a breach of the contract; (4) malice on the part of the defendant; (5) breach of the contract; (6) proximate causation; and (7) injury to the plaintiff. Id. Treble damages are available for the statutory claim under Tenn.Code Ann. § 47–50–109. See Polk & Sullivan, 783 S.W.2d 538, 542 (Tenn.1989); Expert Janitorial v. Capital Contracting of Buffalo, 2013 WL 2450109 (E.D. Tenn. 2013).

TI has alleged in Count III of the Complaint that M3 engaged in tortious interference. In support of that claim TI alleged that Towne's Agreement was a valid and enforceable, lawful contract between Towne and TI, that M3 was aware of the Agreement and that it intended to, and did, induce the breach of the Agreement, and that M3 acted intentionally and with

5

malice. (Second Amended Compl. Para. 37). TI alleged that the breach of the Agreement occurred as a direct and proximate result of M3's conduct, and that TI has been damaged and continues to be damaged as a direct and proximate result of M3's conduct in inducing the breach of Towne's Agreement (Second Amended Compl. Para. 38, 39). In Count VI, TI alleged against M3 a statutory claim for inducement to breach contract in violation of Tenn. Code Ann. §47-50-109. In support of that claim, TI alleged that Towne's Agreement was a valid and enforceable, lawful contract, that M3 was aware of the Agreement and that it intended to, and did, induce the breach of the Agreement, and that M3 acted intentionally and with malice. (Second Amended Compl. Para. 49). TI alleged that the breach of the Agreement occurred as a direct and proximate result of M3's conduct, and that TI has been damaged and continues to be damaged as a direct and proximate result of M3's conduct in inducing the breach of Towne's Agreement (Second Amended Compl. Para. 38, 39). TI has alleged short and plain statements of the claims showing that it is entitled to relief, and has clearly given M3 fair notice of what the claims are and the grounds upon which they rest. See Givens v. Mullikin, 75 S.W.3d 383, 405 (Tenn.2002); Carruthers Ready–Mix, Inc. v. Cement Masons Local Union No. 520, 779 F.2d 320, 323 (6th Cir.1985). Polk & Sullivan, 783 S.W.2d 538, 542 (Tenn.1989); Expert Janitorial v. Capital Contracting of Buffalo, 2013 WL 2450109 (E.D. Tenn. 2013). As such, the Motion to Dismiss must be denied.

     Nevertheless, M3 claims that in its Motion that TI failed to allege that M3 knew about Towne's Agreement, or that M3 had an improper motive or used improper means – in other words, that M3 acted with malice. For the reasons set forth below, M3's Motion to Dismiss must be denied.

*1. TI has sufficiently alleged that M3 had knowledge of Towne's Agreement.*

M3's first argument is deceptive. Indeed, M3 doesn't deny the obvious – that it knew about the Agreement that Towne, its employee, had with TI, his former employer, or that it knew that its employee was restricted based on that Agreement by a TRO and then a Preliminary Injunction – it just claims that "*Plaintiff* has *failed to allege* that Plaintiff knew" about the Agreement and these injunction. First, Plaintiff is TI – and TI, which initiated this lawsuit, obtained injunctive relief, and has been pursuing the case all along, certainly knew that Towne was contractually precluded from pursuing the Restricted Projects. Although M3's argument that TI, or Plaintiff, did not know that Towne was contractually precluded is facially nonsensical, to the extent that what M3 really meant to say was that Plaintiff has failed to allege that *M3* did not know about Towne's Agreement and the injunctions enforcing it, that argument does not fare any better. Indeed, that M3 can make this argument "with a straight face" is particularly surprising given the fact that it was actually represented that M3 withdrew from a "restricted project" – the "FIT Ticker Project" – based on the entry of the TRO against Towne, enforcing his Agreement. In any event, the argument that Plaintiff has "failed to allege that Plaintiff [or M3, if that's what was intended] knew" is flat wrong. TI has alleged that M3, as Towne's employer, knew about his Agreement, and about both the TRO and the Preliminary Injunction Order that were entered by this Court enforcing the Agreement – after which it went ahead and still secured the Restricted Project that Towne had secured for it in violation of his Agreement. (Second Amended Compl. Para. 37, 49). As such, this argument obviously cannot be sustained.

*2. TI has sufficiently alleged that M3 acted with malice.*

M3 contends that TI has not alleged that it acted with improper motive, or malice. M3 is wrong again. TI has alleged that M3, as Towne's employer, knew about his Agreement and

7

about the injunctions entered enforcing the Agreement, and that M3 nevertheless moved forward with taking advantage of Towne's efforts to secure a Restricted Project, "H04676 & H05905 University of Memphis – Community Health", in order to obtain this significant project, to the benefit of M3, and the detriment of TI, which lost out on this project as a direct result.  TI has alleged that M3 would neither have known about let alone been in a position to bid for this Restricted Project without the active introduction and involvement of Towne, who was TI's primary contact with the University and for this Restricted Project, and that Towne aggressively pursued this Restricted Project for M3 in violation of his Agreement.  TI has alleged that M3 intended to, and did, induce the breach of Towne's Agreement, that it acted intentionally and with malice, and that the breach of Towne's Agreement occurred as a direct and proximate result of M3's conduct.   These allegations are more than sufficient to satisfy the element of malice, or evil intent on the part of M3, as this element does not require ill will or spite, but just that M3 intended to get the Restricted Project, which necessarily inflicted injury to TI.  See, e.g., Expert Janitorial v. Capital Contracting of Buffalo, 2013 WL 2450109 (E.D. Tenn. 2013) ("[a]ll of the defendants in this case were bound by contracts, both individually and as a corporation, to not solicit Expert's customers. Doel and Burns formed the leadership team of Capital, and maliciously and intentionally chose to violate the terms of their agreements and actively pursue a current client of Expert. This was done without any legal justification, which constitutes malice. '[U]nlike the level of malice ordinarily required for punitive damages under Tennessee law, malice in the context of an inducement of breach claim does not require ill will or spite toward the injured party. It only requires the intentional commission of a harmful act without justifiable cause'"); Middle Tennessee Lumber , Inc. v. Door Components, LLC, 2013 WL 3761307 (M.D. Tenn. 2013) ("The Court is not persuaded by the Defendants' arguments that they are entitled to

8

summary judgment because there is a lack of evidence on the elements of malice and proximate cause. In the context of the plaintiff's claims, malice means "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." If a defendant intends to gain business from a breaching third party, and if the breach necessarily inflicts injury upon the plaintiff, that is enough from which an evil intent can be inferred"); B & L Corp. v. Thomas & Thorngren, Inc., 162 S.W.3d 189, 219 (Tenn.Ct.App.2004) (" [a]s for whether the defendants acted maliciously in procuring Krystal's breach, we note that "malice" is defined as "[t]he intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." *Black's Law Dictionary* 862 (5th ed.1979). It is undisputed that the defendants, thru Thorngren, intended to get the Krystal business which necessarily inflicted injury to B & L and is sufficient to imply an evil intent. The trial court correctly found that the defendants induced the breach of the Krystal contract").

### III. CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff Technical Innovation, LLC respectfully requests that Defendant M3 Technology Group's Motion to Dismiss be denied.

DATED this 5th day of June, 2015.

                Respectfully submitted,

                /s/ Scott V. Kamins
                Scott Kamins, *admission pro hac vice*
                Offit Kurman
                8171 Maple Lawn Blvd., Suite 200
                Maple Lawn, MD  20759
                (301) 575-0347 (phone)
                (301) 575-0335 (facsimile)
                skamins@offitkurman.com
                Counsel for Plaintiff Technical Innovation, LLC

## **CERTIFICATE OF SERVICE**

      This is to certify that on this 5th of June, 2015, a copy of the foregoing Opposition to Motion to Dismiss was filed electronically and made available for viewing on the Court's ECF System for Defendants' counsel, listed below:

David Wade
Andrew R. Gardella
Martin Tate Morrow & Marston, P.C.
International Place, Tower II
6410 Poplar Avenue, Suite 1000
Memphis, Tennessee 38119-4839
Counsel for Defendant Towne

Christopher W. Cardwell
Gullett Sanford Robinson & Martin PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
Counsel for Defendant M3 Technology Group

                                        /s/ Scott Kamins

4849-6216-6052, v. 1